UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CAROL ZIMMER,

                    Plaintiff,

    — against —

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                    Defendant.
------------------------------------------------------------X

**MEMORANDUM AND ORDER**

07-CV-4036 (SLT)(RLM)

**TOWNES, United States District Judge:**

    Carol Zimmer ("Plaintiff") brings this action under 42 U.S.C. § 405(g) seeking reversal of a final decision of the Commissioner of Social Security ("Commissioner") which holds that she was not eligible for Disabled Adult Child ("DAC") insurance benefits under Section 202(d)(1) of the Social Security Act ("the Act"). To be eligible for DAC benefits based on the work record of her late father, Plaintiff must have been "disabled" within the meaning of the Act prior to her 22nd birthday on April 15, 1974. Thus, the Commissioner contends that the issue here is whether the ALJ's finding that no impairment prevented Plaintiff from engaging in substantial gainful activity prior to April 15, 1974 was supported by substantial evidence. On the other hand, Plaintiff's sole argument is that this case must be remanded back to the Commissioner to consider new evidence submitted to this Court.

    Plaintiff filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, seeking remand. The Commissioner cross-moved for judgment on the pleadings, seeking dismissal of Plaintiff's case. Based upon the written submissions of the parties, a thorough review of the record, and for the reasons that follow, Plaintiff's motion is granted and Commissioner's motion is denied.

1

## BACKGROUND

### I. Procedural History

On January 19, 2006, Plaintiff filed an application for DAC insurance benefits, alleging that she became disabled on March 10, 1974 due to arthritis affecting her knees, back, neck, and shoulders. Admin. R. ("A.R.") 56. Her claim was denied at the administrative level and she requested a hearing before an administrative law judge ("ALJ"), who held a hearing on March 14, 2007. Plaintiff was represented by counsel at the time. The ALJ denied the claim on March 29, 2007. *Id.* at 15-22. The ALJ's finding that Plaintiff was not disabled prior to April 15, 1974 became the final decision of the Commissioner on September 19, 2007, when the Appeals Council denied her request for review. *Id.* at 5-7. Plaintiff, again represented by counsel, commenced this action on September 24, 2007.

### II. Factual & Medical Background

Plaintiff was born on April 15, 1952 and was almost 55 years old at the time the ALJ issued her decision. *Id.* at 23. Plaintiff asserts that she has been disabled since March 10, 1974, due to arthritis of the knees, back, neck, and shoulders. *Id.* At the hearing before the ALJ, Plaintiff testified that, although she experienced pain in multiple joints during childhood, she was able to go to school on a full-time basis with the exception of participating in gym class. *Id.* at 136, 142. She noted that, from childhood to age 22, she was treated by Dr. Otto Moses. *Id.* at 134, 136. Dr. Moses made house calls to Plaintiff's home because of the pain in her joints. *Id.* By age 20, Dr. Moses prescribed the use of a cane as well as Tylenol, hot towels and Bengay cream to treat her joint pains. *Id.* at 134, 139, 140.

She had attended three years of college, but claimed to have dropped out because of her arthritis. *Id.* at 59, 133. While she was in college, Plaintiff took buses to and from campus, but

she claimed it was difficult due to pain in her neck, knees, and arms. *Id.* at 138-39. Plaintiff testified that, by the time she stopped attending college because of the pain, she could not kneel, squat, or reach. *Id.* at 144, 148-49. She treated her pain by staying at home, lying in bed, and using Tylenol, hot towels, and Bengay. *Id.* at 139. Thereafter, she spent her days talking to her mother, watching television, playing with dolls and stuffed animals and talking on the phone with friends for a few minutes at a time. *Id.* at 139.

Starting around January 1995, Plaintiff began to be treated by Albert Wright, M.D. *Id.* at 94. In notes dated March 17, 2006, Dr. Wright stated that Plaintiff has had painful joints since childhood which have limited her activities. *Id.* at 92. He also found that her arthritic pain had been intensifying since 1995. *Id.* He indicated that Plaintiff's "pains have been increasing in intensity, limiting her daily activities, aggravating ambulation, and causing weakness at times," rendering her "essentially house bound." *Id.* Dr. Wright aslo noted that Plaintiff wore a lumbar brace and used a walking cane for balance and that Plaintiff's range of motion was decreased in all her symptomatic joints, including the knees, lower back, shoulder, and neck. *Id.* at 93, 95-96. In his March 17, 2006 record, Dr. Wright further opined that she could lift up to 10 pounds, stand and/or walk for less than 2 hours, and sit for less than 6 hours in a work day. *Id.* at 97. In another record, dated June 30, 2006, Dr. Wright listed that Plaintiff could sit and stand or walk for less than an hour each in an eight-hour day and could lift and carry up to ten pounds. *Id.* at 113-14. In a letter dated May 14, 2007 submitted to the Appeals Council, Dr. Wright maintained that he had treated both of Plaintiff's parents when they were alive and, "with regard to [Plaintiff], I ascertained from her parents and herself that she has had arthritis since the age of 16yrs and the continued symptoms have left her totally disabled and unable to pursue a gainful employment." *Id.* at 13.

At the time of the hearing, Plaintiff lived alone in an apartment. *Id.* at 154. She was unable to do any housework and relied on others for most of her care. *Id.* at 154-55. On her disability forms, she indicated that she has never worked. *Id.* at 56.

### III. ALJ's Decision

On March 29, 2007, the ALJ issued a written decision denying the Plaintiff's application for DAC benefits finding that she was not disabled prior to April 16, 1974. The ALJ reviewed Plaintiff's medical history and the record and concluded that, "[w]hile the claimant's arthritis is currently 'severe,' there is insufficient documentation to support a finding of disability prior to the claimant's 22nd birthday." *Id.* at 22. The ALJ noted that Dr. Wright did not treat Plaintiff until 1994 and that his medical evidence was "of limited, if any, value with respect to the severity of the claimant's arthritis some 20 years before." *Id.* at 20. The ALJ did note that Dr. Wright indicated that her joint pain has progressed and intensified in 1995, well after her 22nd birthday. *Id.*

Based on the dearth of evidence from the relevant time period, the ALJ concluded that Plaintiff was not disabled prior to April 16, 1974. *Id.* at 21. The ALJ found that Plaintiff at the time was a younger individual and was able to perform sedentary exertion, including lifting and carrying up to ten pounds, sitting up to six hours and standing or walking up to two hours. *Id.* at 20. Based on these findings, the ALJ held that Plaintiff was not entitled to DAC insurance benefits.

## DISCUSSION

### A. Standard of Review

This Court may set aside an ALJ's decision only where it is based upon legal error or where its factual findings are not supported by substantial evidence. *See Balsamo v. Chater*, 142

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

This Court also reviews the ALJ's decision to determine whether the ALJ applied the correct legal standard. *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). "'Where an error of law has been made that might have affected the disposition of the case, this Court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ.'" *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) (quoting *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 n.3 (11th Cir. 1982)). This Court reviews questions of law *de novo*. *Id.*

### B. Legal Standard for Disability Determinations

To be entitled to DAC insurance benefits on the record of a deceased, disabled or tiered wage earner, a claimant must establish that she was under a disability that began before she attained the age of 22 years. 42 U.S.C. § 402(d)(1)(B)(ii); 20 C.F.R. § 404.350(a)(5). In this case, Plaintiff attained the age of 22 years on April 15, 1974.

The term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Balsamo*, 142 F.3d at 79.

In evaluating a claim for disability benefits, the ALJ must follow the five-step procedure set out in the regulations governing the administration of Social Security benefits. *See* 20 C.F.R. §§ 404.1520, 416.920; *Diaz v. Shalala*, 59 F.3d 307, 312 n.2 (2d Cir. 1995); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience .... Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity ["RFC"] to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Berry*, 675 F.2d at 467) (alterations and omission in original). The claimant bears the burden of proof in the first four steps of the inquiry, but the Commissioner bears the burden in the fifth step. *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004) (quoting *Balsamo*, 142 F.3d at 80).

### C. Plaintiff's Request for Remand Based on New Evidence

The Court first addresses Plaintiff's contention that this case should be remanded to the Commissioner in light of new evidence submitted to this Court. A court may order the Commissioner to consider additional evidence "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding...." 42 U.S.C. § 405(g); *see also Schaal v. Apfel*, 134 F.3d 496, 506 (2d Cir. 1998). This standard is satisfied when the plaintiff shows that (1) "the evidence is new and not merely cumulative;" (2) the evidence is "material [in that it is] both ... relevant to

the claimant's condition during the time period [covered by the decision] . . . . [and there is] a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently;" and (3) there is "good cause for her failure to present the evidence earlier." *Molina v. Barnhart*, No. 04 Civ. 320, 2005 WL 2035959, at *7 (S.D.N.Y. Aug. 17, 2005) (quoting *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988); *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991)). "Good cause for failing to present evidence in a prior proceeding exists where, . . ., the evidence surfaces after the [Commissioner's] final decision and the claimant could not have obtained the evidence during the pendency of that proceeding." *Lisa v. Secretary of Health & Human Servs.*, 940 F.2d 40, 44 (2d Cir. 1991) (internal quotation marks omitted).

First, Plaintiff requests that the Commissioner consider a letter putatively signed by Dr. Otto Moses. In relevant part, the letter states,

> I was Carol Zimmer's Docter [sic] before she was 22 years old. Carol was disabled by arthritis before the age of 22. That was my diagnosis.
> She could only walk for 1 short block and I advised her to always use a cane. She could not stand or sit for long. She had much pain but she became allergic to aspirin at a very young age. She spent most of her time in the house and I remember making housecalls for her.

"Dr. Otto Moses" letter, Attach. to Pl.'s Mem. L.

This evidence is new, not merely cumulative, and material to the period covered in the ALJ's time period. The ALJ repeatedly commented on the lack of first-hand documentation of Plaintiff's medical condition prior to April 15, 1974. This letter potentially sheds some light on the Dr. Moses's treatment of Plaintiff during this dispositive period. The letter's signatory claims to be Dr. Moses, who treated Plaintiff from childhood to 22, and opines that Plaintiff's arthritis prior to age 22 was severe enough to limit her physical activities. If credited, this evidence would certainly bear on the ALJ's assessment of Plaintiff's disability and residual

7

functional capacity during the relevant period. Indeed, "while a treating physician's retrospective diagnosis is not conclusive, it is entitled to controlling weight unless it is contradicted by other medical evidence or 'overwhelmingly compelling' non-medical evidence." *Byam v. Barnhart*, 336 F.3d 172, 183 (2d Cir. 2003) (quoting *Rivera v. Sullivan*, 923 F.2d 964, 968 (2d Cir. 1991)). As for cause, Plaintiff maintains that she believed that Dr. Moses was deceased at the time of the ALJ hearing. Zimmer Aff. ¶ 3. According to Plaintiff, her father told her that Dr. Moses had passed away and she was only able to discover that Dr. Moses was alive and living in Florida after reading the ALJ's decision. *Id.* ¶ 3. Under the circumstances, the Court finds good cause for producing this evidence after the Commissioner's decision. Accordingly, the Court remands this matter to the Commissioner to consider this new evidence.[1]

Second, Plaintiff submits a February 27, 2007 decision from the U.S. Department of Veterans Affairs ("VA") awarding her a full grant of helpless child benefits. *See* Dep't of VA Decision Review Officer Decision, Attach. to Pl.'s Mem. L. The VA decision stated that "evidence establishes that [Plaintiff] became permanently incapable of self-support prior to [her] 18th birthday by reason of physical or mental disability diagnosed as arthritis." *Id.* The VA based its decision on the evidence of Dr. Wright, who claimed that he treated her family for years and that he knew that Plaintiff had disabling arthritis since she was a teenager. *Id.*

The VA decision was not in the record before the ALJ and, thus, is new and not merely cumulative. Moreover, although the VA and the Commissioner operate under different statutory regimes, the fact that the VA granted Plaintiff disability benefits based on an identical claim would be material to the Commissioner. Indeed, disability decisions of "another governmental agency" should be given "some weight[,] and should be considered" by the Commissioner in

---

[1] The Commissioner challenges the authenticity of this letter. As the Commissioner is the fact-finder in Social Security cases, *see* 42 U.S. 405(g), this is a question best determined on remand.

8

making his own disability determination. *Tai-Fatt v. Barnhart*, No. 04 Civ. 9274, 2005 WL 3206552, at *7 (S.D.N.Y. Nov. 30, 2005) (quoting *Cutler v. Weinberger*, 516 F.2d 1282, 1285-86 (2d Cir. 1975)); *see also Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981) ("A VA rating is certainly not binding on the [Commissioner], but it is evidence that should be considered and is entitled to great weight."). As to cause, Plaintiff submits that she did not receive the VA decision until after the ALJ's decision and she did not submit it to the Appeals Council because she was unrepresented by counsel at the time and she did not understand its significance. Zimmer. Aff. ¶ 2. Again, under the circumstances, the Court finds good cause for producing this evidence after the Commissioner's final decision. Accordingly, on remand, the Commissioner shall consider this new evidence.

Finally, Plaintiff provides a letter from a neighbor, Isabel Rosario, who wrote that she knew Plaintiff since before Plaintiff was 22 years old. *See* Rosario letter, Attach. to Pl.'s Mem. L. Rosario stated that she personally witnessed that Plaintiff was disabled by arthritis before age 22, that she could not stand or sit for more than a few minutes, that she could walk only one block with a cane, and that it was painful for Plaintiff. *Id.* As far as this evidence is concerned, it is cumulative of evidence already in the record. Plaintiff submitted and the ALJ considered letters by German Olivo, another one of Plaintiff's neighbors who claimed to witness her with a cane prior to April 15, 1974. *See* A.R. 85-86. While lay opinion is material to the Commissioner's decision, *see Rose v. Barnhart*, No. 01 Civ. 1645, 2003 WL 1212866, at *5 (S.D.N.Y. Mar. 14, 2003) ("lay testimony about Plaintiff's daily activities during the relevant period could have provided meaningful evidence as to his condition"), standing alone, it was not sufficient to alter the ALJ's decision. The Court also notes that a letter from Isabel Rosario already appears in the record. *See* A.R. 84. In that letter, Rosario stated that she had been

friends with Plaintiff for 16 years and that she helps her with her housework, laundry, shopping and preparation of food. *Id.* It makes no mention of Rosario's observations from before April 15, 1974. Lastly, Plaintiff's contention that she did not previously submit Rosario's letter to the Commissioner "because [she] thought that the letters from German Olivo w[ere] sufficient to win [her] case," Zimmer Aff. ¶ 6, is not a compelling cause to obviate her responsibility to produce timely evidence before the Commissioner. Accordingly, the Commissioner need not consider this evidence on remand.

Since the Court remands this case based on new evidence, it need not consider the Commissioner's arguments that the final decision was supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the Plaintiff's motion for judgment on the pleadings is granted and the Commissioner's motion for judgment on the pleadings is denied. The Commissioner's decision is hereby vacated and this case is remanded for additional fact finding consistent with this Memorandum & Order.

**SO ORDERED.**

Dated: Brooklyn, New York
December 21, 2009

/SANDRA L. TOWNES
United States District Judge